## APPEAL OF B. F. RUFF.

FROM THE DECREE OF THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, IN EQUITY.

Argued October 4, 1887—Decided October 24, 1887.

1. Section 5057, Rev. St., U. S., providing: " No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee," is a complete bar to a bill by an assignee in bankruptcy, filed more than two years after his appointment to enforce the specific performance of the bankrupt's contract, although not specially set up in the answer as a defence to the action.

2. The court will not decree the specific execution of a contract to convey an interest in lands, indefinite in its description of the lands intended, and unperformed on the part of the vendee for eight years before bill filed, and in the meantime the situation has been wholly changed and the value of the lands greatly enhanced.

Before GORDON, C. J., PAXSON, STERRETT, GREEN and WILLIAMS, JJ.; TRUNKEY and CLARK, JJ., absent.

No. 56 October Term 1887, Sup. Ct.; court below, No. 102 in Equity 1882.

The proceeding below was a bill in equity filed on January 4, 1882, by Daniel L. Dillinger, assignee in bankruptcy of John L. Dillinger, a bankrupt, against B. F. Ruff, for an account of the rents and profits and of the proceeds of sale of a parcel of real estate sold by the defendant before the filing of the bill, and for the specific performance of a contract for the conveyance of certain other real estate. After the appeal was taken from the decree of the court below, the defendant in the bill died, when his death was suggested and The Safe Deposit Company of Pittsburgh, as administrator, substituted.

It was alleged in the bill, in substance, that on February 6, 1872, B. F. Ruff entered into a written agreement under seal with said John L. Dillinger to convey to him the undivided one tenth part of certain coal lands and privileges, part of which were in Derry township, and part in Mt. Pleasant township on the Big Sewickley, amounting in the aggregate to about 1000 acres, for $10,000 to be paid as specified, and that Dillinger had paid one half thereof in February and March, 1872; that at the time of the agreement Dillinger was the owner of two tracts in Derry township, one of 186 acres, and the other of 168 acres, and was also the owner of 175 acres of coal in Mt. Pleasant township, on the Big Sewickley; but that he was not the owner or part owner of any other lands than those described by any title that could be enforced at law or which were within the intent and meaning of the agreement; that the average cost to the defendant of the lands described per acre, was $83.79, and that the plaintiff's proportion of these lands according to the amount of purchase money paid would be 59¾ acres; praying for an account of the rents, issues and profits and also an account of all moneys received by the defendant upon sales made by him of any part of said lands, and for a decree requiring the defendant to convey to the plaintiff his portion of the lands undisposed of.

The answer admitted the execution of the agreement as set out; that at the time thereof the defendant was the owner of

the two tracts in Derry township, but denied that one of them, that of 186 acres called the Bennett farm, was embraced in or intended to be embraced in the agreement; averring that the only lands and coal privileges so embraced or intended were the Pollins farm of 168 acres in Derry township, 125 (instead of 175) acres of coal in Mt. Pleasant township, and certain other lands described in contents and situation, aggregating with those above mentioned about 1000 acres, the number expressed in the agreement. The averment of the bill that the defendant was not the owner or part owner of any other lands than those set out in the bill was denied, and the ownership by the defendant of over 1000 acres of land not including the 186 acre tract in Derry township was claimed; and it was denied that the average cost to the defendant of the lands described in the bill, or the share of John L. Dillinger therein, was as stated in the bill; and it was further denied that John L. Dillinger had performed his stipulations and covenants contained in the agreement and was entitled to the relief prayed for.

Issue being joined, the cause was referred to *Mr. Vin. E. Williams*, as examiner and master, who found the facts following:

That John L. Dillinger and B. F. Ruff, on February 6, 1872, entered into a sealed agreement in writing, containing the following material provisions:—

The said Ruff being part owner of certain lands and coal privileges, part in Derry township, Westmoreland county, Pennsylvania, and balance in the valley of the Big Sewickley, county and state aforesaid, making about one thousand acres, hereby agrees to sell to the said Dillinger, the one undivided one tenth part of all the above named property for the sum of ten thousand dollars, payable as follows: One dollar in hand, the receipt whereof is hereby acknowledged: five thousand dollars in his notes at ninety days and four months from the fifteenth day of February, 1872, which, when paid, shall be in full for half of purchase money, and balance in two equal annual payments from the first day of March, 1872; to all of which the party of the second part agrees.

It is mutually understood and agreed that these payments are made on the basis of one hundred dollars per acre, but if

when payment in full for such lands and privileges, including cost of building branch railroad up the Sewickley valley to them, shall be less than above named basis, then the said Dillinger is to have a proportional reduction made on amounts hereby agreed to be paid. The object being to give him his interest at the actual cost of said privileges and improvement.

That, at the date of the agreement, Ruff was the owner of the tract of 186 acres, known as the Bennett farm, purchased by articles dated September 17, 1871, for $120 per acre, payable one third on March 1, 1872, and the residue in two equal annual payments with interest. Ruff went into possession of this farm on April 1, 1872, and on April 13, 1876, conveyed it to John Chalfant for $56,050.50.

That, at the date of the agreement Ruff owned also a tract of 168 acres in Derry township, purchased from David A. Pollins, who conveyed the same to him on March 20, 1872, for $21,000. On November 12, 1875, Ruff conveyed one half of this tract to D. R. Davidson for $10,500.

That Ruff also owned at the date of the agreement the coal under a tract in Mt. Pleasant township on Big Sewickley, conveyed to him by Peter Steinman on April 1, 1872, for $1,000, and had since disposed of one half of this tract to William Thaw for $9,375 and still held the residue.

That Ruff received the rents and profits of the Bennett tract from April 1, 1872, to April 1, 1876; of the Pollins tract from April 1, 1872, to April 1, 1875, and one half of the rents and profits of the last-named tract from April 1, 1875, to the filing of the bill.

That in addition to the above-mentioned tracts, Ruff also held at the date of the agreement five contracts for the purchase of entire and part interests in five other parcels of land, containing 60, 150, 175, 160, 190 acres respectively, the consideration in each contract being $1; which tracts, with the Bennett, Pollins and Steinman tracts, made an acreage aggregating over 1214 acres.

That, as Ruff (found from the testimony) made no exceptions or reservation of any lands owned by him in Derry township at the time of the execution of the agreement, and made no express reservation in the agreement, the Bennett tract was included within its provisions.

That on March 5, 1872, John L. Dillinger had paid to Ruff one half of the purchase money due on the contract, but that the balance of $5,000 was never paid.

That no money was expended by the defendant to build a branch railroad up the Big Sewickley valley; the railroad there constructed, known as the Youngwood Branch, about which testimony was taken, was constructed and operated by the South-west Penn. Ry. Co., in which the defendant was a stockholder and director, at its proper cost.

From the foregoing facts the master reported an account charging the defendant with the amount of purchase money paid on the agreement, less the one tenth of actual cost to the defendant of all the tracts owned by him in whole or in part at the date thereof, including the Bennett tract, and with the one tenth of the proceeds of sale of the Bennett tract and one tenth of the income of the Pollins tract, with interest on the several amounts, finding as the cash sum due the plaintiff at the filing of the bill, $9,057.11. The master then recommended a decree requiring the defendant, within sixty days from date, to convey to the plaintiff the undivided one tenth of the Pollins tract of 168 acres, the undivided one tenth of the coal under the Steinman tract of 125 acres, and the undivided one tenth of the other privileges, lands and coals, for which the defendant held contracts at the date of the said agreement, particularly described in said report, and to pay to the plaintiff within sixty days the said sum of $9,057.11, with interest from January 4, 1882.

To the master's report and decree recommended various exceptions were filed by the defendant, one of which was as follows:

7. The complainant, or his assignee, not having offered in his bill to account and pay over the balance of the purchase money due, the respondent is not in a position to demand an account from the respondent in a court of equity; and, moreover, the contract is within the statute of frauds and perjuries, there being no sufficient memorandum to take it out of the statute, and the bill should be dismissed at the cost of the complainant.

The bill of the complainant further claims specific performance of the contract of 6th February, 1872, after the lapse of

nearly ten years from the date of the original contract—after the value of property during that period had greatly changed by the construction of railroads and other improvements; and this, also after he had positively refused to comply with his part of the contract, as testified to by the respondent, and not denied by the complainant, and without any offer on the part of the complainant to now pay the balance of the purchase money due on the contract, to wit, $7,502.50, on which interest is to be computed from 4th of January, 1882, and in the face of the fact that the contract set up is within the statute of frauds and perjuries, there being no sufficient identification of the land or of its price without the aid of parol testimony.

While these exceptions were pending, on March 6, 1886, the defendant's attorney moved the special leave of the court to amend the answer filed by adding as follows:

That the said complainant should not have or maintain against him, the said respondent, the bill of complaint, because, he says, that long before the filing of said bill, to wit, January 4, 1882, the said complainant, as assignee in bankruptcy of John L. Dillinger, was barred of his said action and complaint by virtue of the provisions of § 5057 of the Revised Statutes of the United States, which limits the right of action to two years from the date of the assignment in bankruptcy; and further pleads the statute of limitations under the state law; and that the said amendment be separately engrossed and added as a distinct amendment to the original answer, so as to be distinguishable therefrom.

Section 5057 of the Rev. St. of the U. S. referred to is in these words:

No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee. And this provision shall not in any case revive a right of action barred at the time when an assignee is appointed.

The fact appeared in the case, though neither in the pleadings nor found specially by the master, that John L. Dillinger had been adjudicated a bankrupt in the District Court of the

U. S. for the W. D. of Pennsylvania on April 17, 1878, receiving his final discharge as such bankrupt on December 22, 1880.

To the rule granted to show cause why said amendment should not be made the plaintiff made answer; whereupon the court, JAMES A. HUNTER, P. J., under the authority of Wood Lim. 14; Bright. Eq., § 707; Everhart's App., 106 Pa. 349; discussing Equity Rule 53; § 2, act March 20, 1859 P. L. 775; Insurance Co.'s Assignee v. McLaughlin, 105 U. S. 1195; Dick's Appeal, 106 Pa. 589; Wilhelm's App., 79 Pa. 120; Thomas v. Hall, 2 Pears. 64, refused the amendment prayed for, on the ground that, raising a new and distinct defence, it had not been applied for in proper time.

On September 11, 1886, the master overruled the plaintiff's exceptions filed before him, and filed his report. The exceptions being then renewed, the court, on argument, without filing an opinion, dismissed them, and signed the decree recommended by the master. The defendant thereupon took this appeal, specifying that the court erred: (1) In dismissing the defendant's exceptions to the master's report; (2) In refusing to allow the amendment of the defendant's answer; and (3) In signing the decree recommended by the master.

*Mr. Paul H. Gaither* and *Mr. H. P. Laird* (with them *Mr. J. A. Marchand* and *Mr. John B. Keenan*), for the appellant:

1. The specific performance of a contract will not be decreed unless its terms are clear and capable of ascertainment from the instrument itself: Story Eq. J., § 767; Hammer v. McEldowney, 46 Pa. 334; or, where the evidence is in any degree uncertain, Fussell v. Rhodes, 2 Phila. 165. The evidence must be clear, precise and indubitable; the witnesses must distinctly remember the facts to which they testify; they must relate the details exactly: Phillips v. Meily, 106 Pa. 536; Thomas v. Loose, 114 Pa. 35; Cullmans v. Lindsay, 114 Pa. 166; Callen v. Ferguson, 29 Pa. 247; Churcher v. Guernsey, 39 Pa. 84; Du Bois v. Baum, 46 Pa. 537; Miller v. Henlan, 51 Pa. 265; Cadwalader's App., 57 Pa. 158; Russell v. Baughman, 94 Pa. 400; Dohnert's App., 64 Pa. 311; Bodine v. Glading, 21 Pa. 50; Meason v. Kaine, 63 Pa. 335; Dorman's Est., 20 W. N. 522; Pattison v. Martz, 8 W. 374, 379.

2. The defendant had a legal right to interpose the bar of the statute of limitations and of the act of congress in any stage of the proceedings before final judgment: § 6, act of March 21, 1806, 4 Sm. L. 329; Young v. Commonwealth, 6 Binn. 88; Franklin v. Mackey, 16 S. & R. 117. A party may amend as often as necessary: Hamilton v. Hamilton, 18 Pa. 20; Neely's App., 85 Pa. 387; Barnholt v. Ulrich, 11 W. N. 51. The statute need not be pleaded in equity after great laches: Smith v. Clay, Amb. 645; 2 Story Eq. J. 1520; Boone v. Childs, 10 Pet. 177. § 5057 Rev. St. U. S. was an absolute bar to the action: Upton v. McGlaughlin, 15 Otto 640; Retzer v. Wood, 109 U. S. 185; Bailey's Ass. v. Glover, 21 Wall. 637; Rosenthal v. Walker's Ass., 111 U. S. 395; Gifford v. Helms, 8 Otto 248.

*Mr. James S. Moorhead* (with him *Mr. John B. Head*), for the appellee:

1. The subject-matter, the land, being described, evidence is admissible to apply the description to the land, and this contract is not within the statute of frauds: Ferguson v. Staver, 33 Pa. 411; Smith & Fleck's App., 69 Pa. 474; Ross v. Baker, 72 Pa. 186; Evans v. Prothero, 13 Eng. L. & Eq. 163. The phraseology of the contract fills the measure of the decisions of this court.

2. As to § 5057 Rev. St. U. S.: (1) The respondent was too late in availing himself of this plea: Everhart's App., 106 Pa. 349; Upton v. McGlaughlin, 15 Otto 640. (2) It is not applicable to an express trust, and therefore cannot be pleaded herein: Banks v. Ogden, 2 Wall. 57; Seymour v. Freer, 8 Wall. 202; Boone v. Childs, 10 Pet. 177; Rush v. Barr, 1 W. 110; Fox v. Cash, 11 Pa. 207. We submit that until actual notice by Ruff to Dillinger, or his assignee, or such acts of adverse ownership as are equivalent to actual notice of a denial of the latter's title, the former will be taken to hold under the contract and not against it.

3. On the question of laches arising from the lapse of time, we cite McGlaughlin v. Shields, 12 Pa. 283, 290. All of the cases where lapse of time and change of circumstances induced the chancellor to refuse a decree of specific performance, were cases where the complainant had not performed his contract

at all, or had only performed it in part and to a limited extent: Cadwalader's App., 57 Pa. 158; Miller v. Henlan, 51 Pa. 265; Du Bois v. Baum, 46 Pa. 537; Dohnert's App., 64 Pa. 311.

OPINION, MR. JUSTICE WILLIAMS:

The contract, the specific execution of which is sought by this bill, was made on the 6th February, 1872. It provided for the sale by Ruff to J. L. Dillinger of the one tenth part of about one thousand acres of land and coal privileges of which Ruff was part owner, in Derry township and the valley of the Big Sewickley in Westmoreland county, for ten thousand dollars. Of the purchase money, one half was to be paid in notes at ninety days and four months, "and the balance in two equal annual payments from the first day of March, 1872." The notes for the first payment were given and have been paid. The other payments have not been made, but Dillinger neglected and declined to make them, alleging ·in substance that there was not enough of value in the purchase to justify it. Four years after the last payment fell due, Dillinger became a bankrupt and in 1880 obtained an absolute discharge from all debts which he owed on the 17th April, 1878, which included the one half of the purchase money due on this contract and the interest thereon. The assignee in bankruptcy some four years after his appointment filed this bill, asking specific execution of the contract of 1872 in accordance with his version of it. The defendant below sought to avail himself of the protection provided by the act of congress of 2d March, 1867, which declares that "no suit at law or in equity shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee."

The court was of opinion that the defendant was not entitled to the benefit of this act without setting it up specially in his answer as a bar to the plaintiff's action. The defendant then asked leave to amend his answer by incorporating into it a paragraph for this purpose, but leave was not granted. In this the court erred. The act of congress is a proper and adequate reply to the plaintiff's bill, and unless he can relieve

himself from its operations by showing such circumstances as will prevent its application to him, it is a conclusive one. This we understand to be the rule as laid down in the cases cited.

But we are not disposed to put our disposition of this case upon the act of congress alone. After a careful examination of the contract, the report of the master and the evidence, we are satisfied that the case presented is not one that entitles the plaintiff to the intervention of a chancellor. The contract is for an undivided one tenth part of "lands and coal privileges," of which Ruff was part owner, situated in Derry township and the valley of the Big Sewickley, and amounting to one thousand acres. It describes no particular tract or coal privilege. The plaintiff has endeavored to show that a tract called the Bennett tract was one of those in the contemplation of the parties, but the fair balance of the testimony is against him on this question. For eight years after the last payment fell due, the vendee neither performed on his part nor asked performance. One half of the purchase money according to the plain terms of the contract is yet unpaid, except as it has been paid by the plaintiff's discharge as a bankrupt. Meantime the whole situation has greatly changed. A railroad has been built which brings these lands within reach of the market and greatly enhances their value. Coal has been opened on some of them. Some of them have been sold. The plaintiff having laid by for years, while these things have been going on, now asks to have the benefit of a contract which he declined to perform for years after it was made. These are not the circumstances, nor is this the conduct on the part of a purchaser that is calculated to move the conscience of a chancellor. The plaintiff below should be left to his remedies at law.

> And now, October 7, 1887, the decree of the Court of Common Pleas of Westmoreland county, directing specific execution of the contract set out in the plaintiff's bill and the payment of nine thousand and fifty-seven dollars and eleven cents, with interest thereon and costs, is reversed, and the plaintiff's bill is dismissed at costs of appellee.